UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GOVERNMENT CONTRACT SERVICES, INC., | CASE NO.:   5:20-cv-01480 |
| | JUDGE JOHN R. ADAMS |
| Plaintiff, | |
| v. | |
| ELEGALSUPPLY.COM, LLC, *et al.*, | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | (Resolves Doc. 6) |

Currently pending before this Court is a motion to dismiss Plaintiff Government Contract Services, Inc.'s ("GCS") complaint for lack of personal jurisdiction and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. (Mot. to Dismiss 1, ECF No. 6.) In the alternative, Defendants eLegalSupply.com ("Legal Supply") and Jason Horner ("Horner") (collectively "Defendants") request this matter be transferred pursuant to 28 U.S.C. §1404(a). (*Id.* at 1-2.) GCS timely opposed Defendants' motion, to which Defendants timely filed a reply in support of their original motion. (Opp'n to Mot. to Dismiss, ECF No. 9; Reply in Supp. of Mot. to Dismiss, ECF No. 10.)

For the reasons explained herein, this Court finds that it does not possess personal jurisdiction over Defendants and declines to transfer the matter.

I.  **STATEMENT OF FACTS**

On June 2, 2020, GCS, an Ohio corporation, filed a complaint against Legal Supply, a New Jersey limited liability company, and Horner, an individual residing in New Jersey, in the Summit County Court of Common Pleas. (Compl. ¶¶ 1-3, ECF No. 1-2.) On July 6, 2020, Defendants

timely removed the matter to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332. (*See generally* Notice of Removal, ECF No. 1.)

This action arises out of a Google review posted by Horner on February 25, 2020. (Compl. ¶¶ 9, 11, ECF No. 1-2.) On February 24, 2020, GCS contacted Horner about assisting with Legal Supply's General Services Administration ("GSA") schedule. (*Id.* at ¶ 8.) GCS received no answer and left a voicemail. (*Id.*) The next day Horner authored a one-star Google review, stating that GCS has "some very shady and deceiving advertising practices," and that the GCS employee who left the voicemail had "purposefully attempted to present herself as government personnel." (*Id.* at ¶¶ 9, 11-14.) The Google review also states that the GCS employee did not identify herself, or the reason for leaving a voicemail. (*Id.* at ¶ 15.) This review is still available on Google. (*Id.* at ¶ 12.) GCS asserts that these statements were false and defamatory in nature. (*Id.* at ¶ 10.) GCS contends that as a direct and proximate result of the Google review, it has lost significant revenue. (*Id.* at ¶ 16.) GCS also alleges that as a direct and proximate result of Defendants' actions its standing and reputation in the community has been damaged. (*Id.* at ¶ 17.) For this, GCS brings a claim of defamation and seeks punitive damages against both Horner and Legal Supply. (*Id.* at ¶¶ 18-28.)

The complaint sets forth that GCS is "an Ohio Corporation licensed to transact business in the State of Ohio, with its principal place of business located in Summit County, Ohio." (*Id.* at ¶ 1.) The complaint provides that Legal Supply "is a limited liability company with its principal place of business in Mullica Hill, New Jersey." (*Id.* at ¶ 2.) The complaint also states that Horner "is an individual residing in Mullica Hill, New Jersey." (*Id.* at ¶ 3.) GCS further alleges that Legal Supply is "engaged in the sale of legal supplies, is authorized to do business in the State of Ohio, and

regularly conducts business in the State of Ohio." (*Id.* at ¶ 2.) The complaint states that Horner is the statutory agent and president for Legal Supply. (*Id.* at ¶ 4.)

In response to GCS's complaint, Defendants filed the currently pending motion to dismiss, asserting that this Court lacks personal jurisdiction and GCS failed to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. (Mot. to Dismiss 1, ECF No. 6.) Alternatively, Defendants ask for a transfer of venue under 28 U.S.C. § 1404(a). (*Id.* at 1-2.)

Defendants agree with GCS that in February 2020, an agent of GCS identifying herself as "Debbie" contacted Horner and left a voicemail. (Mem. in Supp. Mot. to Dismiss 1, ECF No. 7.) Horner claims that in the voicemail "Debbie" stated that she needed to talk to him about Legal Supply's GSA contract. (*Id.*) Horner alleges that "Debbie" made him believe that she was a government official calling about a concern with the GSA contract. (*Id.* at 1-2.) Horner further alleges that this voicemail cost him time investigating what the potential issue was, and when he discovered that "Debbie" was not a government official, but instead wished to sell him services, Horner felt "duped." (*Id.* at 2.) Horner admits to writing the one-star Google review in question but contends that it "contained only his personal opinions, subjective beliefs, and factually true statements." (*Id.*)

Horner claims that he has "zero connection" to the State of Ohio. (*Id.* at 7.) Horner is an individual with residence in Mullica Hill, New Jersey. (*Id. See also* Compl. ¶ 3, ECF No. 1-2.) Horner states that he "(1) does not maintain or own personal or real property in Ohio; (2) is not employed in Ohio and, to his knowledge, has never been employed by an Ohio-based employer; (3) has not personally conducted business in Ohio and does not employ anyone in Ohio or otherwise have any agents domiciled or residing in Ohio; (4) has not travelled to Ohio or spent any time in Ohio other than possibly to travel through the state to get to other destinations; (5) has not

knowingly had contact with anyone in Ohio (other than counsel since the commencement of this suit) in his individual capacity; and (6) does not maintain any bank accounts in Ohio." (Mem. in Supp. Mot. to Dismiss 7, ECF No. 7. *See also* Affidavit of Horner at ¶¶ 5-10, ECF No. 8.) Horner maintains that GCS made unsolicited contact with him. (Mem. in Supp. Mot. to Dismiss 7, ECF No. 7.)

Legal Supply is a limited liability company organized under the laws of New Jersey, with a principal place of business and corporate headquarters in Mullica Hills, New Jersey. (*Id.* at 8. *See also* Compl. ¶ 2, ECF No. 1-2.) Defendants state that "Legal Supply does not have any offices, employees, or business registrations in Ohio, and all of its employees work at its headquarters and principal place of business in New Jersey." (Mem. in Supp. Mot. to Dismiss 8, ECF No. 7. *See also* Affidavit of Horner ¶ 15, ECF No. 8.) Defendants also allege that Legal Supply does not own property or maintain bank accounts in Ohio. (Mem. in Supp. Mot. to Dismiss 8, ECF No. 7. *See also* Affidavit of Horner ¶¶ 12-13, ECF No. 8.) Defendants admit that Legal Supply does operate a website available to customers throughout the United States, including Ohio, but "does not specifically advertise in Ohio or seek interaction with residents of Ohio." (Mem. in Supp. Mot. to Dismiss 8, ECF No. 7. *See also* Affidavit of Horner ¶ 16, ECF No. 8.)

In response to Defendants' motion to dismiss, GCS asserts that Legal Supply's website establishes personal jurisdiction with this Court. (Opp'n to Mot. to Dismiss 5, ECF No. 9.) GCS alleges that Legal Supply's homepage indicates that "1) they offer their services at least nationwide; and 2) they offer their services to 'federal agencies' across the nation via its GSA contract." (*Id.*) GCS states that this is evidence of "continuous and systematic contacts with all states, including Ohio." (*Id. See also* Opp'n to Mot. to Dismiss Ex. C, ECF No. 9-3.) GCS also points to Legal Supply's Frequently Asked Questions website section, which, by making the

statement that sales tax is only applied to New Jersey and California orders, implies nationwide shipping and is evidence that "[Legal Supply] engages in business across the country." (Opp'n to Mot. to Dismiss 6, ECF No. 9. *See also* Opp'n to Mot. to Dismiss Ex. D, ECF No. 9-4.) In an attempt to further establish jurisdiction over Defendants, GCS declares that by the time Horner made the Google review he had "an understanding of both the nature and location of GCS's business." (Opp'n to Mot. to Dismiss 7, ECF No. 9.) GCS contends that when Horner made the Google review with this knowledge, it "availed both Legal Supply and Horner to the jurisdiction of Ohio courts for purposes of this litigation." (*Id.*)

Defendants' reply in support of its motion to dismiss maintains its contention that jurisdiction in this Court is unfounded, despite GCS's arguments. (Reply in Supp. of Mot. to Dismiss 2, ECF No. 10.) Defendants reiterate that neither Horner, nor Legal Supply, have any connection to Ohio. (*Id.* at 2-3.) Defendants also reassert that neither Legal Supply's website, nor Horner's Google review justify jurisdiction with this Court. (*Id.* at 5-6.)

## II.   PERSONAL JURISDICTION

### A. Standard of Review

Regarding the pending motion to dismiss for lack of personal jurisdiction, "[t]he procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). As plaintiff, it is GCS's burden to establish that this Court has personal jurisdiction over both Horner and Legal Supply. *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). GCS is required to "set forth specific facts showing that the court has jurisdiction." *Id.* (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).

Where, as with the instant matter, a court rules on a motion to dismiss for lack of personal jurisdiction by analyzing the pleadings and motions before it without the parties engaging in discovery or the court conducting an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . ." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen*, 935 F.2d at 1458-59). GCS "need only make a prima facie showing of jurisdiction." *Id.* (citing *Theunissen*, 935 F.2d at 1458-59).

A prima facie showing that personal jurisdiction exists is made by "establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted). When determining whether a prima facie showing of jurisdiction has been made, a court "does not weigh the controverting assertions of the party seeking dismissal," which "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459.

### B. Discussion

In cases where subject matter jurisdiction is predicated on diversity, such as the instant matter, when determining whether personal jurisdiction exists over an out-of-state defendant, the law of the forum state is looked to. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Accordingly, this Court may only validly exercise personal jurisdiction over an out-of-state defendant when **both** the forum state's long-arm statue and constitutional due process requirements are met. *Id.*

1. *Constitutional Due Process*

The analysis for this Court, in determining whether personal jurisdiction over Defendants is proper pursuant to constitutional due process requirements, focuses on whether Defendants have sufficient minimum contacts with Ohio such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Calphalon*, 228 F.3d at 725; *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The critical question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Pursuant to due process considerations, personal jurisdiction over Defendants may be based upon general jurisdiction or specific jurisdiction, "depending upon the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)). General jurisdiction exists where "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). General jurisdiction exists where a defendant is essentially at home. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

General jurisdiction over Defendants is not present in this matter. The complaint sets forth that Horner is a New Jersey resident, and that Legal Supply is a New Jersey limited liability company with its principal place of business in Mullica Hill, New Jersey. Other than the Google review directed at GCS, the only ties to Ohio that GCS alleges are that Legal Supply is authorized to do business in the State of Ohio, and that it regularly conducts business in the state of Ohio. Although

GCS alleges that Legal Supply maintains continuous and systematic contacts with Ohio through business transactions and the solicitation of business in Ohio, GCS fails to support this general contention, even when this Court considers all provided information in the light most favorable to GCS. There is no indication in either the pleadings, affidavits, or supporting documentation that Legal Supply maintains continuous and systematic contacts with Ohio such that it is essentially at home in Ohio. Furthermore, the Sixth Circuit Court of Appeals has confirmed that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov*, 667 F.3d 705, 717 (6th Cir. 2012). Therefore, if constitutional due process requirements are met in this matter, it must be pursuant to the limitations of specific jurisdiction.

Specific jurisdiction allows a state to exercise "personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The standard used to determine whether a defendant should reasonably anticipate out-of-state litigation is the following:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe,* 326 U.S. at 319). Accordingly, the Sixth Circuit Court of Appeals has set forth a three-part test to determine the outer limits of personal jurisdiction based upon Defendants' contacts with Ohio:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action

must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir. 1968).

With respect to the first prong of the *Southern Machine* test, the purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person' . . . . Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting, in turn, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417; *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Physical presence in the forum state, however, is not required to find purposeful availment. *CompuServe*, 89 F.3d at 1264. What is required is actions by the Defendants that are purposefully directed towards individuals in the forum state. *Id.* (citing *Burger King Corp.*, 471 U.S. at 476). Going further, it is not the mere existence of contacts between a defendant and the forum state that is important, but rather the quality of those contacts. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006) (citing *Calphalon*, 228 F.3d at 722).

a. Legal Supply's Website

The complaint asserts the fact that Legal Supply is authorized to do business in the state of Ohio, and regularly conducts business in the state of Ohio, as sufficient for this Court to exercise specific personal jurisdiction over the Defendants. GCS does not allege that any business conducted by Defendants within the state of Ohio gave rise to the issues of this case. Instead, GCS

provides that Legal Supply's homepage and associated Frequently Asked Questions page indicate that Legal Supply regularly does business throughout the United States and with federal agencies throughout the United States. GCS concludes that "the nature of its online business, in and of itself, implies the requisite continuous and systematic contacts with the forum state." (Opp'n to Mot. to Dismiss 5-6, ECF No. 9.)

The Sixth Circuit has held, however, that a defendant maintaining "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction." *Bird*, 289 F.3d at 874 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997)). The operation of a website may be used to find specific jurisdiction if the operation satisfies the three elements of the *Southern Machine* test, "namely, if the operation of the website constitutes purposeful availment, is the basis of the cause of action against the defendant, and jurisdiction over the defendant is reasonable." *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 677-78 (6th Cir. 2005). Purposeful availment will be found when "the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

GCS does not put forth any specific facts that the Legal Supply website reveals specific, intended interaction with Ohio residents. GCS merely asserts that the Legal Supply website is open to costumers from all fifty states, and therefore, by implication, has availed itself to the privilege of Ohio's laws. GCS does not allege that they conducted business with Legal Supply from the State of Ohio, nor can they point to any other specific instance of Legal Supply conducting business within the State of Ohio. GCS's claim that Legal Supply's website is open to customers nationwide, and therefore Ohio, cannot satisfy the requirement of purposeful availment.

Even had purposeful availment been found by way of the Legal Supply website, the second factor of the *Southern Machine* test requires that the website be "the basis of the cause of action against the defendant." *Cadle*, 123 F. App'x at 677-78. GCS attempts to put forth Legal Supply's website as a contact with Ohio in order to satisfy personal jurisdiction, when, in fact, the website itself is completely unrelated to the cause of action – the allegedly defamatory Google review. None of the operative facts of this case can be seen as arising from Legal Supply's website resulting in contact with Ohio. The mere existence of a website maintained by the Defendants, completely unrelated to the alleged cause of action, cannot satisfy the second factor set forth in the *Southern Machine* test. Therefore, because the website does not satisfy the requirement of purposeful availment and is not the basis of the cause of action, the third factor of the *Southern Machine* test is also not satisfied. This attenuated and unrelated contact with Ohio cannot make "the exercise of jurisdiction over the defendant[s] reasonable." *S. Mach. Co.,* 401 F.2d at 381. Accordingly, this Court does not possess personal jurisdiction over Legal Supply.

      *b. The Google Review*

GCS claims that Horner's allegedly defamatory statement was made with knowledge that GCS was located in Ohio, and with knowledge that the consequences of the act would be felt in Ohio. (Opp'n to Mot. to Dismiss 7, ECF No. 9.) In order to establish personal jurisdiction by way of an intentional tort, such as defamation, there must be "intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). The forum state must be the focal point of both the intentional act of the Defendants, and the harm suffered by GCS. *See Calder v. Jones*, 465 U.S. 783, 789 (1984). Injury to a forum resident, in and of itself, will not be considered sufficient to create a contact. *Walden*, 571 U.S. at 290. "The proper

question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

GCS conducted the unilateral act of contacting Horner in an attempt to solicit business. GCS relies on the fact that Horner researched the identity of GCS prior to posting the Google review as evidence that Horner both knew the location of GCS and directed his review towards Ohio. Horner posted the allegedly defamatory review to a third-party review site that has no specific target state as an audience. The review does not mention the location of GCS, and there is no evidence presented that Horner actually knew the location of GCS when he posted the review. Furthermore, GCS alleges generally that Horner's Google review has caused significant financial loss and loss of reputation in the community. GCS makes the claim that the Google review "would be regularly seen and reviewed by other current or potential clients doing business with GCS, an Ohio company." (Opp'n to Mot. to Dismiss 8, ECF No. 9.) However, GCS provides no basis for belief that anyone in Ohio read the review, let alone that the review itself proximately caused any damage to GCS. Even taking these allegations of harm as true, however, Horner's attenuated singular contact with Ohio through a Google review is simply not a substantial or meaningful enough contact to establish personal jurisdiction over Horner under the legal framework of constitutional due process.

2. *Ohio's Long-Arm Statute*

This Court recognizes that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause . . . ." *Calphalon*, 228 F.3d at 721. *See also Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238, 638 N.E.2d 541 (1994), fn. 1. Therefore, with the finding that this Court does not possess personal jurisdiction over either Horner or Legal Supply under the constitutional analysis, only a brief analysis of Ohio's long-arm statute

requirements is needed to further solidify the conclusion that this Court cannot properly exercise personal jurisdiction over Defendants.

Looking to Ohio's long-arm statute, it states:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;
>
> (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which the person commits or in the commission of which the person is guilty of complicity;
>
> (8) Having an interest in, using, or possessing real property in this state;
>
> (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

R.C. 2307.382(A)(1)-(9).

GCS's first contention, that Legal Supply is licensed to, and does conduct business in the State of Ohio by way of its website, seeks to satisfy R.C. 2307.382(A)(1). Ohio's "'transacting any

business' standard is coextensive with the Due Process Clause in that it requires both that the defendant have purposefully availed itself of the privilege of acting in Ohio or have caused a consequence in Ohio and that the act or consequence in Ohio be sufficiently substantial to support jurisdiction." *Burnshire*, 198 F. App'x at 430. Additionally, R.C. 2307.382(A) explicitly states that a court may exercise jurisdiction over an individual only when the cause of action is "arising from" the applicable subsection. As discussed in the constitutional due process analysis, the fact that Legal Supply maintains a website for its sales that is available in all fifty states cannot alone satisfy the requirement of purposeful availment. Legal Supply's website, and the fact that GCS alleges that Legal Supply conducts business in Ohio, is unrelated to the cause of action, and thus irrelevant. Ohio's long-arm statute is not satisfied by virtue of Legal Supply's website.

GCS's second theory of personal jurisdiction concerns the alleged defamatory Google review. Defamatory statements made outside of Ohio will be found to satisfy R.C. 2307.382(A)(6) when they are made "with the purpose of injuring an Ohio resident and there is reasonable expectation that injury will occur in Ohio . . . " *Mumaw v. Thistledown Racetrack LLC*, No. 1:13CV1048, 2015 U.S. Dist. LEXIS 122672, at *7 (N.D. Ohio Sep. 15, 2015) (quoting *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08CV977, 2009 U.S. Dist. LEXIS 11023, at *9 (N.D. Ohio, Feb. 13, 2009)) (internal quotation marks omitted). Again, as analyzed previously, Horner made the allegedly defamatory statements on a third-party website with no specific target forum. GCS makes only a general allegation that Horner researched its identity, and thus drew the conclusion that Horner must have known the location of GCS and intended the harm of his statement to be felt in Ohio. These bare allegations do not rise to the appropriate level to satisfy the requirements in R.C. 2307.382(A)(6) of having "the purpose of injuring an Ohio resident" and a "reasonable expectation that injury will occur in Ohio."

For all the reasons discussed, this Court does not possess personal jurisdiction over Defendants. Defendants' contacts with the State of Ohio do not give rise to personal jurisdiction under a constitutional due process analysis, nor does GCS's complaint set forth sufficient facts to satisfy Ohio's long-arm statute.

### III. TRANSFER

Contained within the motion to dismiss for lack of personal jurisdiction, Defendants request, should this Court find it possesses personal jurisdiction over Defendants and the matter is not otherwise dismissed, that this Court transfer the matter to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). GCS opposes this request, alleging that Horner knew "the nature, scope, and location of Plaintiff's business" at the time he posted the Google review, meaning he "knew or should have known that his actions would materially impact a company with its principal place of business in Twinsburg, Ohio." (Opp'n to Mot. to Dismiss 13, ECF No. 9.) Although GCS does not connect these statements to the statute, which provides that this Court may transfer the matter "to any other district or division where it might have been brought," "[f]or the convenience of parties and witness, [or] in the interest of justice," GCS's opposition to transfer is noted. 28 U.S.C. § 1404(a).

Because this Court does not possess personal jurisdiction over the Defendants in this matter, and GCS has asked this Court not to transfer the matter, it will not be transferred, but rather, dismissed without prejudice.

### IV. CONCLUSION

Under both constitutional due process analysis and Ohio's long-arm statute, this Court does not possess personal jurisdiction over Horner or Legal Supply. Therefore, Defendants' Motion to Dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(2) is hereby GRANTED. This Court will not

address the merits of Defendants' Motion to Dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(6). Because this Court lacks personal jurisdiction over Defendants, and because GCS opposes transfer of the matter, this case is hereby dismissed, without prejudice.

    IT IS SO ORDERED.

DATE: January 11, 2021                      /s/ John R. Adams
                                                                                      Judge John R. Adams
                                                                                      UNITED STATES DISTRICT COURT